FILED
2006 Feb-27 AM 10:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **VULCAN ENGINEERING COMPANY, et al.,** | } } } |
| Plaintiffs, | } } } |
| v. | Case No.: 2:05-CV-2103-RDP } } |
| **XL INSURANCE AMERICA, INC.,** | } } } |
| Defendant. | } |

## MEMORANDUM OPINION

### I.   INTRODUCTION

This case comes before the court on Plaintiffs'[1] Motion for Summary Judgment (Doc. #14) filed on December 16, 2005, and Defendant XL Insurance of America, Inc.'s ("XL") Motion to Dismiss (Doc. #18) filed on December 27, 2005.[2] On January 6, 2006, XL filed its response (Doc. #20), and on January 24, 2006, Plaintiffs filed their reply. (Doc. #22). The court held a hearing in this case on February 15, 2006, beginning at 10:00 a.m. in courtroom 7A. For the reasons stated during the hearing and discussed below, the court concludes that XL has no duty to defend Plaintiffs. Accordingly, Defendant's Motion to Dismiss is due to be granted, Plaintiffs' Motion for Summary Judgment is due to denied, and Plaintiffs' case is due to be dismissed.

---

[1] The three named plaintiffs are: Vulcan Engineering Company, Peter Petrillo, and Ryan Wierck.

[2] Defendant's Motion to Dismiss renews the supporting materials that it previously filed with the court in conjunction with its first Motion to Dismiss (Doc. #8) filed on November 15, 2005.

## II.     STANDARD OF REVIEW[3]

XL has challenged the sufficiency of Plaintiffs' Amended Complaint for coverage (Doc. #13) under Rule 12(b)(6), which provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. A court may dismiss a complaint (or a portion thereto) under Rule 12(b)(6) only if it appears beyond a doubt that Plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the complaint as true and construe the facts in a light most favorable to the non-moving party." *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002) (citing *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998)). "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)).

Further, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory [it] relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (emphasis in original) (citing *Robertson v. Johnston*, 376 F.2d 43 (5th Cir. 1967)).

---

[3]While procedurally, the parties have chosen to file their motions under separate rules of Federal Civil Procedure, substantively, they are in agreement that the facts are not in dispute and that the court's decision on the issue of XL's duty to defend is dispositive of this entire action. The court's review of the parties' motions on a Rule 12(b)(6) basis is consistent with the parameters of the record before it. *See Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1368-69 (11th Cir.1997) (recognizing that appropriate documents for court to consider when ruling on a Rule 12(b)(6) motion include complaint, any attachments, and any additional documents referenced therein that "are central to the plaintiff's claim") (citation omitted).

Finally, "[t]he threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is . . . 'exceedingly low.'" *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985) (quoting *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev.*, 711 F.2d 989, 995 (11th Cir. 1983)).

### III.   ANALYSIS

#### A.   Undisputed Background

This case concerns a dispute over whether XL has a duty to defend Plaintiffs, pursuant to a Directors and Officers Liability Insurance Policy (the "D&O Policy"), in connection with an underlying lawsuit pending in the Circuit Court of Jefferson County, Alabama (the "*Zettler* Action"). The *Zettler* Action is a lawsuit filed by a former minority shareholder of Vulcan Engineering Company, Philip S. Zettler, and his company, P.Z., Inc., and was brought as a direct action against Plaintiffs. In his state court lawsuit, Zettler has expressly disavowed any derivative claims. (Doc. #13 at Ex. 2 ¶ 35 (("Zettler's claims are individual rather than derivative because Zettler was the only minority stockholder in Vulcan and his injuries are personal.")). Further, the circuit court ruled in the *Zettler* Action that Zettler did not have standing to assert any derivative claims. Therefore, it is abundantly clear that the *Zettler* Action simply does not involve any derivative claims. Nevertheless, Plaintiffs argue that the true nature of the state court litigation is akin to a derivative lawsuit because in it Zettler asserts claims of corporate mismanagement, breach of fiduciary duty, and the like. (*See generally* Doc. #13 at Ex. 2). Both sides agree that the *Zettler* Action falls within the scope of the D&O Policy's "insured versus insured" or "insured vs. insured" exclusion. The specific language in the D&O Policy over which the parties disagree is an exception to the insured vs. insured exclusion which provides as follows:

3

(A) No coverage will be available under [the D&O Coverage Section] for any Claim against an Insured: . . .

    (6)    brought or maintained by or on behalf of any Insured in any capacity; provided that this Exclusion (A)(6) shall not apply to:

        (a)    a Securityholder Derivative Demand or Securityholder Derivation Action.

(Doc. #13 at Ex. 1 at D&O Policy at 6). A Securityholder Derivative Action is defined in the D&O Policy as a Claim which is "[1] brought on behalf of, or in the name or the right of, the Insured Organization [2] by one or more securityholders of the Insured Organization in their capacity as such . . . ." (Doc. #13 at Ex. 1 at D&O Policy at 5).

**B.   The *Sphinx* Case and the Plain Meaning Rule**

While the Eleventh Circuit case of *Sphinx International, Inc. v. National Union Fire Ins. Co.*, 412 F.3d 1224 (11th Cir. 2005), involves the interpretation of Florida law, it provides useful guidance on the proper analysis this court should employ here, particularly given the similarities between Florida and Alabama insurance law.[4] In *Sphinx*, the Eleventh Circuit applied the plain meaning rule and thus did not look behind the plain meaning of policy provisions. *Sphinx*, 412 F.3d at 1231. In doing so, it upheld the lower court's determination that the insured vs. insured exclusion

---

[4]Plaintiffs indicated during the hearing that the Second Circuit had declined to follow the *Sphinx* reasoning in a very similar case that arose under New York law. In conducting further research, the court located two unreported and related decisions by the Second Circuit that expressed the view that looking beyond the plain meaning of an insured vs. insured exclusion is appropriate when the exclusionary language is ambiguous. *See Burke v. Bodewes*, No. 04-5695-CV, 2006 WL 140556 (2d Cir. Jan.17, 2006), *as modified by amended summary order in Burke v. Ulico Cas. Co.*, No. 04-5695-CV, 2006 WL 266609 (2d Cir. Feb. 03, 2006). However in this instance, the court is addressing the text of the provisions that it has determined are unambiguous. Moreover, regardless of how other circuits have dealt with the scope of an insured vs. insured exclusion, the *Sphinx* case is a compelling guidepost on how the Eleventh Circuit would likely rule on the application of such a provision under Alabama law.

barred coverage under the insurance policy pursuant to Florida law. *Id.* In rejecting the argument that it should consider the historical underpinnings for the inclusion of an insured vs. insured exclusion, the court explained:

> We agree with the district court that the exclusion's rationale does not trump its text. To be sure, there is a genuine split of authority. Some courts look behind an exclusion's text to its rationale. But while there is a conflict, it's fought outside Florida. Part II.A demonstrates that in Florida the rule for interpreting insurance contracts is the plain meaning of its terms. As a corollary to Florida's plain-meaning rule, Florida courts do not look behind unambiguous policies in search of countervailing rationales. The Florida Supreme Court put it this way: "unless we conclude that the policy language is ambiguous, it would be inappropriate for us to consider the arguments pertaining to the drafting history of the . . . exclusion clause."

*Id.* at 1229-30 (internal citations omitted).

Plaintiffs have not been able to locate any Alabama authority that adopts principles contrary to those analyzed and applied in *Sphinx*. Therefore, to rule in Plaintiffs' favor would amount to a re-writing of the unambiguous, plain and ordinary meanings of the relevant provisions of the D&O Policy in contravention of Alabama law.[5] More specifically, rather than applying the exception to the insured vs. insured exclusion to expressly filed derivative actions "brought on behalf of, or in the name or right of the [insured company,]" if the court were to adopt Plaintiffs' position, the exception would be applied to lawsuits that *arguably* could have been brought derivatively. Such a result

---

[5]The court notes that, in their second brief, Plaintiffs argue that the exclusion is ambiguous as to the status of "Securityholder" under the D&O Policy and that it should include current as well as former shareholders. (Doc. #22 at 7). The court disagrees. However, in any event, the proper scope of the term "Securityholder" is not pivotal to the court's decision on coverage. Instead, the proceedings in the *Zettler* Action including Mr. Zettler's directly-styled complaint and his lack of derivative standing as decided by the *Zettler* court are the driving force behind the court's coverage determination. Plaintiffs do not specifically address any other possible ambiguities contained in the relevant provisions of the D&O Policy.

5

would be contrary to (1) the plain wording of the D&O Policy, (2) the rationale of the Eleventh Circuit in *Sphinx*, and (3) Alabama law.[6]

Moreover, as noted above, as the court reads the record in the underlying *Zettler* Action, the case is now proceeding only to the extent that it does not include any derivative claims. Therefore, it no longer matters whether the *Zettler* Action should (or could) have been brought as a derivative action—any such argument for coverage has essentially been mooted by the *Zettler* court's ruling on that issue. Indeed, the circuit court has made clear that the *Zettler* Action is not a shareholder derivative suit (theoretically or otherwise): "Defendants are quite correct in their position that to the extent Plaintiffs have alleged a derivative action, the action is due to be dismissed" and "[s]hould the action be deemed to be a derivative action, Plaintiff would lack standing to bring it." (Doc. #13 at Ex. 5 at 8). Instead, the *Zettler* Action is proceeding with Zettler prosecuting his claims directly: "The Court finds that the tort of minority shareholder oppression and breach of fiduciary duty has been pled in a manner such that Plaintiff may prove he suffered a direct loss, rather than a loss based on a diminution of share value or other loss that is more directly the loss of the corporation." (Doc. #13 at Ex. 5 at 12). Accordingly, the exclusion at issue applies here, XL has no duty to defend, and its motion to dismiss is due to be granted.[7]

---

[6] The plaintiffs conceded during oral arguments that the jurisdictions of Florida and Alabama insurance law is similar. Moreover, Plaintiffs have not been able to locate any Alabama authority that would lend support to the court's adoption of a rule to look beyond the plain meaning of the exception to the insured vs. insured exclusion under the D&O Policy.

[7] As stated during the hearing, nothing in this opinion is intended to preclude Plaintiffs from later renewing their demand on XL to provide them a defense if circumstances (and perhaps more specifically Zettler's claims) change such that they can be properly characterized as derivative.

## IV.   CONCLUSION

As explained above, the "insured vs. insured" exclusion bars insurance coverage for the *Zettler* Action and the securityholder exception to the exclusion does not apply. Accordingly, XL's Motion to Dismiss is due to be granted, Plaintiffs' Motion for Summary Judgment is due to denied, and Plaintiffs' claims are due to be dismissed. The court will enter an order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this ___24th___ day of February, 2006.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE